UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMAN HARRAZ,

                      Plaintiff,

          – against –

EGYPTAIR AIRLINES COMPANY, VIRGIN
ATLANTIC AIRWAYS LIMITED, GAMAL
MAHER EMOM ALY, PAUL JOHN WESTON, and
PORT AUTHORITY OF NEW YORK & NEW
JERSEY,

                      Defendants.

**OPINION AND ORDER**
18 Civ 12364 (ER)

Ramos, D.J.:

       Before the Court is an action against two airlines, two pilots, and the Port Authority of New York and New Jersey (the "Port Authority") seeking damages for injuries allegedly suffered when the wings of two taxiing aircraft collided. Though initiated in state court, Defendants promptly removed the action to this Court. The Plaintiff, Iman Harraz, now seeks remand, claiming that removal was procedurally defective and that the Court would lack jurisdiction over the action in any event. For the reasons detailed below, the motion to remand is DENIED.

**I.    BACKGROUND**

       On the morning of November 27, 2017, Harraz was on board EgyptAir Airlines ("EgyptAir") flight 986, a passenger flight leaving John F. Kennedy International Airport ("JFK") and bound for Cairo International Airport in Egypt. Compl. ¶¶ 6, 9, 44, Doc. 12-1. All parties agree that as the plane was taxiing in preparation for takeoff, its wingtip collided with that of Virgin Atlantic Airways ("Virgin Atlantic") flight 4C, another taxiing passenger flight bound

for Heathrow Airport in London. *Id.* ¶¶ 11, 25; Def.'s Notice of Removal 1–3, Doc. 2 (hereinafter the "Notice"); ¶ 7; EgyptAir Answer ¶ 25, Doc. 4; Port Authority Answer ¶ 25, Doc. 5; Virgin Atlantic Answer ¶ 25, Doc. 8. Harraz claims that, as a result of this collision, she sustained "severe and permanent" injuries, mental anguish, and a loss in ability to follow her regular vocation. Compl. ¶¶ 26–28.[1]

On November 27, 2018, Harraz brought this action in the Supreme Court of the State of New York, Bronx County, against EgyptAir, Virgin Atlantic, EgyptAir pilot Gamal Maher Emom Aly ("Aly"), Virgin Atlantic pilot Paul John Weston ("Weston," and with Aly, the "Pilots"), and the Port Authority, seeking damages for the injuries allegedly sustained during the collision at JFK. On December 12, 2018, the action was removed to this Court on the basis of original jurisdiction, supplemental jurisdiction, and the removal provision of the Foreign Sovereign Immunities Act ("FSIA") due to the assertion that EgyptAir is an "agency or instrumentality" of Egypt. Notice 1–3.

As a technical matter, EgyptAir alone removed the action. Notice 1 ("defendant EgyptAir Airlines Company . . . by and through its attorneys, Clyde & Co US LLP ("Clyde & Co."), files its Notice of Removal to this Court . . . ."). Although the Notice avers that Virgin Atlantic and the Port Authority consented to removal, *id.* at 4, neither of them formally joined the Notice or explicitly confirmed EgyptAir's claim. However, both Virgin Atlantic and the Port Authority are represented by the same counsel as EgyptAir—Christopher Carlsen and Nicholas Magali of Clyde & Co. At the time that the Notice was filed, counsel had not entered an appearance on behalf of Virgin Atlantic or the Port Authority. But, on January 2, 2019, two days

---

[1] Harraz has not described her physical injuries in great detail, but her Notice of Claim suggests that the injuries affected her back, feet, hips, legs, knees, and neck, resulting in pain, suffering, and a decrease in quality of life, along with other expenses. Doc. 17-1, Ex. A.

after the notice of removal was filed, the Port Authority filed their answer with this Court, listing Carlsen and Magali as their representatives. Five days later, on January 7, Virgin Atlantic did the same.

In response to EgyptAir's Notice, Harraz made the instant motion to remand for procedural defects and lack of subject matter jurisdiction. Pl.'s Mem. Supp. Mot. Remand 2–5, Doc. 13 (hereinafter "Pl.'s Mem."). Every filing in opposition to Harraz's motion was made jointly by EgyptAir, Virgin Atlantic, and the Port Authority, with Carlsen and Magali representing all three.

## II. LEGAL STANDARDS

### A. Removal and Remand

Federal law provides that when an action is brought in state court, defendants may remove the action to federal court in certain circumstances. Relevant here, an action may be removed if it falls within the original jurisdiction of the United States courts, 28 U.S.C. § 1441(a), or if it is brought against a foreign state, or an agency or instrumentality thereof, *id.* § 1441(d). General removal procedure provides that, within thirty days of effective service or receipt of initial pleadings, the defendant or defendants that wish to remove the action must file a notice of removal, including a short and plain statement of the grounds for removal, along with all process, pleadings, and orders, in "the district court of the United States for the district and division within which such action is pending . . . ." *Id.* § 1446(a), (b). All defendants properly joined and served must join the notice or consent to removal. *Id.* § 1446(c).

Once a defendant has filed his notice, the plaintiff may contest removal by filing a motion to remand. *Id.* § 1447(c). Removal may be challenged on a number of grounds, two of which are at issue here. First, if the court lacks clear subject matter jurisdiction, then it cannot consider the

action. *Pan Atl. Grp., Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 638 (S.D.N.Y. 1995) ("Where federal jurisdiction on removal is doubtful, the action should be remanded."); *see also Doe v. Zucker*, No. 17 Civ. 1005 (GTS) (CFH), 2018 WL 3520422, at *4 (N.D.N.Y. July 20, 2018) (collecting cases). Second, failure to adhere to the relevant removal procedures warrants but does not require remand. *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006) (noting that defects in removal procedure are not jurisdictional issues triggering mandatory remand). In the face of a motion to remand, the burden falls on the defendant to demonstrate that removal is procedurally and jurisdictionally sound. *Id.* (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).

Generally, there is a presumption against removal, and uncertainties tend to weigh in favor of remand. *In re Village of Kiryas Joel*, No. 11 Civ. 8494 (ER), 2012 WL 1059395, at *2 (S.D.N.Y. Mar. 29, 2012) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). However, that presumption may be overcome in certain circumstances, and numerous courts have denied remand even where the notice of removal was procedurally defective on its face. *See, e.g., Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927 (8th Cir. 2012) (declining rigid enforcement of technical removal procedures); *Zucker*, 2018 WL 3520422, at *5 (denying remand for what amounted to a technical defect) (citing *Esposito v. Home Depot, Inc.*, 590 F.3d 72 (1st Cir. 2009) (refusing to create a "wooden rule" on whether to remand for procedural defects)); *Dunlop v. City of New York*, No. 6 Civ. 433 (KMK), 2006 WL 2853972, at *2–3 (S.D.N.Y. Oct. 4, 2006) (same).

**B. Jurisdiction**

Two forms of jurisdiction are relevant to this motion. First, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States." 28 U.S.C. § 1331. Because the longstanding "well-pleaded complaint" rule applies in the removal context, there must be a jurisdictional basis for removal on the face of the plaintiff's complaint. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002); *Great N. Ry. Co. v. Alexander*, 38 S. Ct. 237 (1918). However, the burden of establishing jurisdiction falls ultimately on the party invoking removal, and courts "look only to the jurisdictional facts alleged in the Notice of Removal," and, to the extent that they fall within the scope of that notice, any arguments made in response to a motion to remand. *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222, 231–32 (S.D.N.Y. 2018) (citing *Dexia SA/NV v. Bear, Stearns & Co., Inc.*, 945 F. Supp. 2d 426, 429 (S.D.N.Y. 2013)).

Second, when a court has original jurisdiction over some claims in an action, it may also exercise supplemental jurisdiction over all remaining claims, subject to the requirement that they "form part of the same case or controversy." 28 U.S.C. § 1367(a). The central inquiry is whether the two sets of claims "arise from a common nucleus of operative fact," such that a plaintiff would ordinarily be expected to try them all in a single proceeding. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 245 (2d Cir. 2011); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000). Where the requisites of § 1367(a) are satisfied, a court may only decline supplemental jurisdiction if it is statutorily required, *see* § 1367(b) (restricting the exercise of supplemental jurisdiction when premised on diversity jurisdiction), or if they have the discretion to do so:

> The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) *if*—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

5

> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added); *see also Shahriar*, 659 F.3d at 245 ("the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 422, 488 (2d Cir. 1998)). If, however, original jurisdiction is lacking, supplemental jurisdiction may not form an independent basis of jurisdiction over those claims for the purposes of removal. *See Port Auth. of N.Y. & N.J. v. Allianz Ins. Co.*, 443 F. Supp. 2d 548 (S.D.N.Y. 2006).

## III. DISCUSSION

Harraz urges this Court to remand the instant action on two distinct grounds. First, Harraz argues that the notice of removal ("Notice") lacked the unanimous consent of all Defendants and was thus procedurally defective. Pl.'s Mem. 2–3 (asserting that Pilots did not consent); Pl.'s Reply Affirmation Supp. Mot. Remand 3–4, Doc. 18 (hereinafter "Pl.'s Reply") (asserting that Virgin Atlantic and the Port Authority did not consent). Second, Harraz argues that this Court lacks subject matter jurisdiction over this action. Pl.'s Mem. 4–6; Pl.'s Reply 5–6. Neither of these arguments are meritorious.

On the question of consent, the Court finds that: (1) because removal was based in part on the FSIA, the consent of the remaining defendants was not required; and, in any event, (2) the Pilots were not properly served and thus their consent was not required, and (3) Virgin Atlantic and the Port Authority have unambiguously demonstrated their consent to proceed with litigation in this Court. On the question of jurisdiction, the Court finds that, in their Notice and subsequent filings, EgyptAir identified sufficient grounds for this Court to exercise original and

supplemental jurisdiction over all federal and state law claims, respectively.  Based on these findings, the Court DENIES Harraz's motion to remand.

**A. Foreign Sovereign Immunities Act**

EgyptAir removed this action pursuant to both 28 U.S.C. § 1441(a) (general removal provision) and § 1441(d) (removal provision of the FSIA).  Although the Second Circuit has not clearly delineated the scope of removal under § 1441(d), a number of courts have held that it encompasses the whole action, not specific claims, *see Kully v. Aircraft Serv. Int'l Grp., Inc.*, 662 F. Supp. 2d 259, 260 (E.D.N.Y. 2009) (collecting cases); *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 787 (S.D.N.Y. 2017) (noting that the statute was "clearly meant to grant removal jurisdiction over more than just the 'claims' asserted against a foreign state" (internal quotation marks omitted) (quoting *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1258–59 (11th Cir. 1992))), and the statute itself suggests as much, 28 U.S.C. § 1446(d) (referring to the removability of certain "civil action[s]," not specific claims).  Consequently, absent a valid and explicit waiver, a foreign state or entity has an absolute right to remove an action in its entirety, notwithstanding the presence of claims against non-foreign defendants.  *See Rabbi Jacobs Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 128 (E.D.N.Y. 2004) (citing *Elliott Associates, LP v. Republic of Panama*, No. 96 Civ. 5295 (DC), 1996 WL 474173 (S.D.N.Y. Aug. 21, 1996)).

Although neither party raised the point, the absolute right to removal is not limited by the consent requirement, which, by its terms, applies only when "a civil action is removed *solely* under section 1441(a) . . . ." 28 U.S.C. § 1446(b)(2)(A) (emphasis added).  Likewise, courts in this district have held that a notice of removal, when based on the FSIA, is not subject to the consent requirement.  *Abdel-Karim v. EgyptAir Holding Co.*, No. 12 Civ. 5614 (JGK), 2012 WL

5210082 (S.D.N.Y. Oct. 22, 2012); *Refco, Inc. v. Galadari*, 755 F. Supp. 79, 84 (S.D.N.Y. 1991). Because EgyptAir invoked removal under both § 1441(a) and (d), the consent requirement is not strictly applicable and thus is not a basis for remand in the instant action. Moreover, for the reasons that follow, the consent requirement would not warrant remand even if it were applicable here.

### B. Service on the Pilots

Harraz first raises her procedural argument against the Pilots, claiming that although all parties were served before EgyptAir filed its notice of removal, neither Weston nor Aly consented to removal. Pl.'s Decl. Supp. Mot. Remand 4, Doc. 12 (hereinafter "Pl.'s Decl."). In opposition, EgyptAir, Virgin Atlantic, and the Port Authority all assert that the Pilots were not properly served and thus their consent was not required. Defs.' Mem. Opp'n Mot. Remand 5, Doc. 17 (hereinafter "Defs.' Mem."). Because Harraz *attempted* to serve both pilots, *id.* at 4–5, the only question is whether those attempts were sufficient under New York law. *PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07 Civ. 10680 (KMK), 2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("Because plaintiff served process on Defendant prior to removal, the propriety of service must be determined by reference to state law."); *see also Bomze v. Nardis Sportswear*, 165 F.2d 33, 35 (2d Cir. 1948) ("By removal a defendant does not lose [their] right to challenge the invalidity of the service in state court; and thus the first question is whether service was valid under the New York decisions."). After reviewing Harraz's attempted service on the Pilots, the Court finds that it was ineffective.

Harraz attempted to serve Aly, an EgyptAir pilot, by leaving the relevant documents with an unnamed employee at EgyptAir's New York City office and mailing the documents to the same. Aff. Service Gamal Maher Emom Aly, Doc. 12-4 (hereinafter "Aff. Serv. Aly"). New

York's service rules allow service in person and by first class mail to the defendant's "actual place of business." N.Y. C.P.L.R. § 308(2) (McKinney 2019). However, for these purposes, a defendant's actual place of business refers to any location that they, "through regular solicitation or advertisement, [have] held out as [their] place of business." *Id.* § 308(6). As New York state courts have specified, this definition requires that the place be one where the person is physically present with some degree of regularity and where they regularly transact business. *See, e.g.*, *1136 Realty, LLC v. 213 Union St. Realty Corp.*, 12 N.Y.S.3d 294, 295–96 (App. Div. 2015) (citing *Selmani v. City of New York*, 954 N.Y.S.D.2d 580 (App. Div. 2012)).

EgyptAir has two offices in the United States, both of which are in New York City. One is located within JFK, the only airport in the United States that they service. Amir Taha Embaby Decl. Opp'n Mot. Remand ¶ 5, Doc. 17-1, Ex. D (hereinafter "Embaby Decl."). The other is located in downtown Manhattan, where Harraz attempted to serve Aly. *Id.* In his declaration, Embaby, EgyptAir's Financial Manager for the United States, suggests that neither Aly nor any other EgyptAir pilot has a "place of business" at either of these offices for the purpose of service. *Id.* ¶ 4, 8.

EgyptAir's pilots, including Aly, are based out of Cairo and "rarely, if ever, visit the EgyptAir office" in Manhattan. *Id.* ¶¶ 8–9. Even when staying in New York after a flight, there is "no aspect of [Aly's] work for EgyptAir that requires [him] to conduct any type of business or work function in" the Manhattan office. *Id.* ¶ 9. The Court thus cannot conclude that EgyptAir's Manhattan office is one where Aly is "physically present with regularity" or where he "regularly transact[s] business." *1136 Realty, LLC*, 12 N.Y.S.3d at 295. Moreover, as Embaby notes, no one in EgyptAir's New York office has the authority to accept service on behalf of any EgyptAir

9

employee, including Aly. Embaby Decl. ¶ 3. Consequently, service was not effective under either CPLR § 308(2) (service at place of business) or § 308(3) (service of designated agents).

Turning to Weston, a pilot with Virgin Atlantic, the record clearly requires the same result. Harraz attempted to serve Weston by serving Christopher Carlsen—a Clyde & Co. partner and counsel to EgyptAir, Virgin Atlantic, and the Port Authority—at the same time that he served the complaint on Virgin Atlantic through Carlsen. Aff. Service John Weston, Doc. 12-5 (hereinafter "Aff. Serv. Weston"). As Carlsen explained, he was authorized to accept service on behalf of Virgin Atlantic because his firm is a Registered Agent of the company for these purposes. Christopher Carlsen Decl. Opp'n Mot. Remand ¶¶ 5–7, Doc. 17-1 (hereinafter "Carlsen Decl."). However, Carlsen was not authorized to accept service for Weston, nor was he retained by Weston for representation in this litigation at any point. Although Carlsen informed the process server that he could not and was not accepting service for Weston, *id.* ¶ 7, Harraz undertook no further effort to personally serve Weston, instead attempting to complete service by mailing copies to Carlsen's office, Aff. Serv. Weston. Because Carlsen could not accept service on his behalf, Weston has not been properly served.

Parties "who have [not] been properly joined or served" at the time of removal are not within the scope of the consent requirement. 28 U.S.C. § 1446(b)(2)(A). Thus, Harraz's procedural defect argument as to the Pilots falls short. Of course, Harraz may still attempt to perfect service on both Aly and Weston in accordance with federal rules and statutes. 28 U.S.C. § 1448 (allowing defective pre-removal service to be cured post-removal "in the same manner as in cases originally filed in such district court.").

### C. Consent of Remaining Defendants

Harraz also raises her procedural argument against Virgin Atlantic and the Port Authority. Pl.'s Reply 3–4. Citing to prior decisions from this Court and the ubiquitous presumption against removal, Harraz asserts that because neither Virgin Atlantic nor the Port Authority provided the Court with written and independent consent to removal, the Notice was procedurally defective. *Id.* 2–4 (citing, *e.g.*, *In re Village of Kiryas Joel*, No. 11 Civ. 8494 (ER), 2012 WL 1059395, at *3 (S.D.N.Y. Mar. 29, 2012)).[2] The Court disagrees.

In the mine-run of cases, the facial deficiencies relating to Virgin Atlantic and the Port Authority's consent might alone warrant remand. But, given the aforementioned relationship between the three properly served Defendants, this is not the ordinary case, and the presumption against removal does not require the Court to ignore the practicalities of the situation before it. After giving due consideration to the purpose of the consent requirement, the Court finds no reason to override the Defendants' clearly manifested consent because of an error that, for all intents and purposes, amounts to a harmless technical defect.

The requirement that all properly served defendants consent to removal, often called the rule of unanimity, was first recognized by the Supreme Court in 1900 and has more recently been incorporated into the federal civil removal statute. *Chi., Rock Island, & Pac. Ry. Co. v. Martin*, 178 U.S. 245 (1900); 28 U.S.C. § 1446(b)(2)(A). Courts have generally understood the rule as serving the interests of plaintiffs, defendants, and the judiciary as a whole by ensuring the unified pursuit of an action, preventing the imposition of one defendant's interests onto others,

---

[2] The Court recognizes that it need not consider this aspect of Harraz's argument, as it was raised for the first time on reply. *See, e.g.*, *Anghel v. Sebelius*, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012) (collecting cases). However, because the record is sufficient to address Harraz's argument, and because it implicates important concerns relating to the scope of removal, the Court will consider it. *In re Various Grand Jury Subpoenas*, 235 F. Supp. 472, 485 (S.D.N.Y. 2017) ("the Second Circuit has made it abundantly clear that a district court has *discretion* to consider a belatedly-raised argument . . . ." (emphasis added) (internal quotation marks omitted)).

and preventing needless duplication of litigation, respectively. *Esposito v. Home Depot, Inc.*, 590 F.3d 72, 75 (1st Cir. 2009) (hereinafter *Esposito II*).

Since the Court first recognized the need for all defendants to be "united in the petition" for removal, *Martin*, 178 U.S. at 248, there has emerged a view that certain conduct short of formal joinder to the notice of removal can satisfy the rule of unanimity. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1224–25 (9th Cir. 2009) (listing circuits that have not strictly required defendants to join the notice of removal); *see also Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) (allowing demonstrations of consent short of joining the notice). The extent of that flexibility, however, has long been a point of contention amongst the circuits. Over time, two general positions emerged. On the one hand, some circuits have insisted that all non-removing defendants submit explicit *written* notice of their consent to removal. On the other, some circuits have been less stringent, allowing something short of individual written consent from each defendant not joined to the petition. *See, e.g.*, *Proctor*, 584 F.3d at 1224–25 (describing the two dominant positions); *Contreras v. Britestarr Homes, Inc.*, No. 19 Civ. 6980 (JPO), 2019 WL 4930073, at *2 n.3 (S.D.N.Y. Oct. 9, 2019) (same).

This Circuit has typically fallen somewhere between those two ends. Notably, the Second Circuit has explicitly avoided "advising what form consent to removal *must* take," instead providing the limited guidance that defendants must "independently express their consent to removal." *Pietrangelo*, 686 F.3d at 66 (emphasis added). District courts in this Circuit are not unified in their construction of the rule, with some counseling against anything short of written notices of consent, *Heller v. New York City Health & Hosps. Corp.*, No. 09 Civ. 6193 (LTS) (GWG), 2010 WL 481336, at *2 (S.D.N.Y. Feb. 1, 2010); *Sleight v. Ford Motor Co.*, No. 10 Civ. 3629 (BMC), 2010 WL 3528533, at *1 (E.D.N.Y. Sept. 3, 2010), and others employing a

12

more flexible application, *Zucker*, 2018 WL 3520422, at *5 (finding the rule satisfied where one defendant represented the consent of another); *Dunlop*, 2006 WL 2853972, at *2–3 (same). To be sure, neither inter- nor intra-circuit treatment of the rule of unanimity has been a model of clarity. Before attempting to apply that rule, then, a brief restatement of the facts surrounding consent is in order.

As described above, EgyptAir, Virgin Atlantic, and the Port Authority are all represented by the same two attorneys in this case—Carlsen and Magali. Although, at the time that the Notice was filed, counsel had not entered an appearance on behalf of Virgin Atlantic or the Port Authority, both defendants filed answers in this Court under the representation of Carlsen and Magali not more than one week after EgyptAir filed the Notice. Moreover, the Notice explicitly avers that Virgin Atlantic and the Port Authority consented to removal. ¶ 11. While the relationship between the parties and their attorneys does not resolve the issue at bar, it does inform the Court's application of the rule of unanimity.

More specifically, the circumstances lead this Court to consider whether the answers of Virgin Atlantic and the Port Authority, first filed in this Court, might themselves constitute independent expressions of consent. In *Esposito v. Home Depot, Inc.*, the court addressed whether an answer submitted by a co-defendant not joined in the notice of removal could sufficiently manifest their consent, even if the answer was silent on the issue. 436 F. Supp. 2d 343, 344–47 (D.R.I. 2006) (hereinafter *Esposito I*), aff'd *Esposito II*, 590 F.3d at 77. Finding in the affirmative, the court distinguished the case before it from prior authority disallowing the practice by emphasizing that all of the defendants were represented by the same attorney. In such circumstances, the court held, the risk of gamesmanship and prejudice to the plaintiffs or

co-defendants was "virtually eliminated," and any doubt that the non-removing defendant's answer manifested their consent was "eviscerated." *Id.* at 346–47.

The Court finds the logic of *Esposito I* persuasive. By filing their answers in this Court after removal, Virgin Atlantic and the Port Authority strongly implied that they were ready and willing to proceed with litigation in this Court. By doing so while being represented by the same counsel that had filed the notice of removal not more than one week prior, they erased all doubt about the matter. As such, the answers submitted by Virgin Atlantic and the Port Authority unambiguously manifested their consent to removal.

Because the Court has no doubts about the Defendants' consent, remanding this case on a technicality would disserve the judiciary's interest in efficiency, ignore the defendant's clearly expressed intent, and unnecessarily compromise their ability to litigate this case in a manner that is fair to all parties. Moreover, even if the Court were not convinced by the reasoning in *Esposito I*, it still would not remand on the asserted procedural grounds, as any consent-related defect in the notice has been sufficiently cured by the Defendants' joint opposition to the present motion. *See Zucker*, 2018 WL 3520422, at *5; *Crenshaw v. McNamara*, No. 6:15 Civ. 6229, 2016 WL 228358, at *2 (GTS) (W.D.N.Y. Jan. 1, 2016); *Esposito II*, 590 F.3d at 77; *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 202 (6th Cir. 2004).

**D. Jurisdiction**

Harraz also challenges the Court's jurisdiction over this action. The Notice provides three bases for jurisdiction. First, EgyptAir suggests that the Court has jurisdiction over all claims against them because, as an instrumentality of a foreign state, they are statutorily entitled to removal. Notice 2 (citing 28 U.S.C. § 1441(d)). Second, EgyptAir asserts that the Court has original jurisdiction over Harraz's claims under the Convention for the Unification of Certain

14

Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000) ("Montreal Convention"), pursuant to 28 U.S.C. §§ 1331, 1441(a). *Id.* Finally, EgyptAir claims that the Court has supplemental jurisdiction over the state law claims against the Port Authority and the Pilots. *Id.* 2–3. After assessing each argument in turn, the Court determines that: (1) it has jurisdiction over all claims against EgyptAir under the Foreign Sovereign Immunities Act; (2) it has original jurisdiction over the Montreal Convention claims against EgyptAir and Virgin Atlantic; (3) it has supplemental jurisdiction over the state tort claims against Virgin Atlantic and the Port Authority; and (4) if Harraz perfects service of the Pilots, the Court will also have supplemental jurisdiction over the state tort claims against them.

      1. EgyptAir and Virgin Atlantic

First, EgyptAir claims that, because they are an instrumentality of a foreign state, this Court has jurisdiction over all claims against them. Notice 2. As used in the FSIA, "agency or instrumentality of a foreign state," means any entity:

> (1) which is a separate legal person, corporate or otherwise; and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof; and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b); *see also* § 1441(d) (incorporating § 1603's definition). The Supreme Court has clarified that "[m]ajority ownership by a foreign state, not control, is the benchmark of instrumentality status." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under that standard, the Court may exercise jurisdiction over all claims against EgyptAir, a state-owned entity, *Notice* 2, under the removal provision of the FSIA.

Moreover, EgyptAir asserts that the court has jurisdiction over Harraz's Montreal Convention claims against itself and Virgin Atlantic. As with all assertions of original jurisdiction, the Court must find a jurisdictional basis for the specific claims on the face of the plaintiff's complaint. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002). There is no difficulty in doing so here, as "[i]t is beyond doubt that a claim brought under the Montreal Convention . . . presents a federal question sufficient to invoke federal jurisdiction." *Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 385–86 (E.D.N.Y. 2010). Harraz's complaint unequivocally raises Montreal Convention claims against both EgyptAir and Virgin Atlantic. Compl. ¶¶ 34–38, 49–53. Such claims clearly give rise to this Court's jurisdiction under 28 U.S.C. § 1331 and, consequently, removal under § 1441(a).[3]

2. State Tort Claims

Finally, EgyptAir asserts that this Court has supplemental jurisdiction over Harraz's state law claims. Because original jurisdiction was not premised on diversity, this Court has supplemental jurisdiction over the state law claims so long as they "form part of the same case or controversy" as the claims that gave rise to original jurisdiction. 28 U.S.C. § 1367(a). Based on the record before it, the Court concludes that this requirement has been met.

The guiding question in a § 1367(a) inquiry is whether the two sets of claims arise from the same "common nucleus of operative fact." *Shahriar,* 659 F.3d at 245. Here, Harraz's claims against all five Defendants arose from a single incident: the collision between the EgyptAir and

---

[3] A strict reading of the Notice would only treat the Court's jurisdiction over Virgin Atlantic as a matter of supplemental jurisdiction based on Harraz's state law claims. *See* Notice 2 (listing Virgin Atlantic as covered only under supplemental jurisdiction). However, Harraz raised Convention claims against both airlines, and the face of the complaint provides no grounds for distinguishing between the two. The validity of the state law claims against the airlines in light of the Montreal Convention's exclusivity clause, Art. 29, has not been fully briefed. However, as a matter of efficiency, the Court recognizes Harraz's Convention claims against both airlines as a basis for jurisdiction, such that if the state law claims are, in fact, barred by the Convention, this Court's original jurisdiction over the airlines will remain undisturbed.

Virgin Atlantic planes at JFK. Harraz draws no distinction between the factual bases of each claim, instead "repeat[ing], reiterat[ing], and realleg[ing]" the same basic points in support of each individual cause of action. Compl. ¶¶ 25–28, 31, 34, 45, 49, 60, 63, 65. Given the unified factual basis for all of Harraz's claims, the "common nucleus of operative fact" standard is clearly satisfied, and the Court thus has supplemental jurisdiction over Harraz's state tort claims. *Shahriar,* 659 F.3d at 245; *see also In re Air Crash at Belle Harbor*, No. 02 Civ. 6746 (JFK) (RWS), 2003 WL 21032034, at *6 (S.D.N.Y. May 3, 2003) (exercising original jurisdiction over Warsaw Convention claims and supplemental jurisdiction over all non-Convention claims).

Attempting to avoid this result, Harraz asks the Court to exercise its discretion and decline supplemental jurisdiction under § 1367(c). Specifically, Harraz suggests that, because "this is a simple negligence case with one injured plaintiff," the state law claims predominate, thus defeating jurisdiction under § 1367(c)(2). Pl.'s Reply 5. Some courts have suggested that when an action is removed pursuant to the FSIA, the court *must* exercise supplemental jurisdiction over all related claims. *See, e.g.*, *In re Surinam Airways Holding Co.*, 974 F.2d 1255 (11th Cir. 1992). And, in any event, courts lack discretion to decline supplemental jurisdiction under § 1367(c) unless one of the specifically enumerated rationales is applicable to the situation at bar. *Shahriar*, 659 F.3d at 245. Because the Court finds that Harraz's state law claims do not, in fact, predominate over her Convention claims, the Court lacks the discretion to deny supplemental jurisdiction.[4]

Courts in this Circuit have approached § 1367(c)(2) arguments by assessing whether the state law claims are more complex, salient, or burdensome than the federal law claims, or whether the federal law claims are merely tangential or peripheral to the state law claims. *Law v.*

---

[4] Because Harraz did not invoke any other subsection of § 1367(c), the Court will not assess those provisions for the purpose of assessing the scope of its own discretion.

*City of Ansonia*, No. 305 Civ. 1515 (JCH), 2005 WL 3132703 (D. Conn. 2005) (collecting cases). Here, Harraz provides no reason for this Court to believe that her "simple negligence [claims]," Pl.'s Reply 5, are more complex or burdensome than her claims brought under the Montreal Convention.

Moreover, the distribution of state and federal claims in this action does not give rise to § 1367(c)(2) discretion. Harraz raised two claims under the Montreal Convention and five under state tort law. However, the Montreal Convention bars, at the very least, Harraz's state tort claims against EgyptAir. Art. 29; Notice 2. Thus, even if service of the Pilots is perfected, this is not the case where a few tangential federal law claims have been tacked on to a whole host of state law claims. *See OccuNomix Int'l LLC v. N. Ocean Ventures*, No. 03 Civ. 6047 (GEL), 2003 WL 22240660, at *1 (S.D.N.Y. Sept. 30, 2003) (finding that the plaintiff's twelve state law claims predominated over their single federal law claim). Consequently, the Court must exercise supplemental jurisdiction over Harraz's state law claims.

### IV. CONCLUSION

For the reasons set forth above, Harraz's motion to remand is DENIED, and the action will proceed in this Court. The parties are directed to appear for a status conference on January 17, 2020 at 10:00 AM. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 11. It is SO ORDERED.

Dated:   December 6, 2019
           New York, New York

                                                            Edgardo Ramos, U.S.D.J.